You may proceed. Yes. May it please the Court, Renee Maness, appearing on behalf of the petitioner and appellant, Mastin Eugene Taylor. I will be endeavoring to save two minutes for rebuttal. You may do so, Counsel. Just watch the clock. Yes. The issue presented before this Court is very narrow today. It's the appropriate timing to start a statute of limitations decision for a board action that continues an individual on parole. The district court adopted the narrowest possible timeframe, which was the enactment of the Anti-Terrorism and Effective Death Penalty Act back in April of 1996. Which would have established the deadline as April 23, 1997. Correct. It didn't file until August of 04. Is that correct? Actually, there was a filing back in 2001, the date of the revocation. There were filings at that point in time. There was also a later filing with the assistance of counsel under the Oregon administrative rule that allows a reopening of the board's decision. Allows a defendant or a petitioner to challenge the board's decision on a basis including that the board's conduct was in violation of the law. That the board had lost jurisdiction over the petitioner pursuant to the enactment of Oregon law and Oregon's administrative rules. All right, but just so that we're clear, what is your contention in terms of the start date as related to the filing that you rely on? There are two possible dates that we have posited. One is the date that, in fact, the petition to reopen was presented through counsel. And our argument on that is presented based on the Oregon administrative rule. But back up. In terms of the statutory deadline, it's 97 unless something. Unless there's some sort of tolling? Not – tolling is not necessarily necessary in order to determine a parole date. The issue when you have one – No, no, I'm trying to start with what is the applicable statute date? You say it's not 1997. It's some other date. And I need to know what date that is and what's your theory under which we should apply that. The theory is that a parole board determination to revoke an individual on parole is much like a decision to determine that an individual is illegally in the country. Repeat that? Certainly. A parole board determination to revoke an individual, to take their status as they're out in the community and revoke them and put them back in custody, requires a jurisdictional prerequisite that they are properly under the supervision of the board. Every time a decision is made by the board regarding their status, whether out in the community, to take them back into prison, the board has to have appropriate custody over them. It is, to some extent, much like the issue when an individual is challenging the fact they have been illegally deported, and they may have previously, in fact, been illegally deported, but the fact is every time they come back before the district court on a new 1326 case, they can still challenge their underlying citizenship. That's what this court reached as a decision in U.S. v. Smith v. Balthier, B-A-L-T-I-H-E-R, 424F3913, and said even though we have previously deported this individual, we have found that they were not a citizen, they're back before us again, they're illegally in the country, they now want to once again say, I am a citizen, you don't have the right to deport me. The underlying status of their citizenship is a jurisdictional prerequisite. That is what the Second Circuit did with the administrative decisions of the board revoking a parole. The underlying jurisdictional prerequisite is you are properly subject to the jurisdiction of the board. And the board in Oregon has specifically adopted a rule, OAR-255-080-0010, that says you can always seek to reopen a board's decision revoking your probation. We presented this on page 10 of the Blue Brief by arguing that the board is outside its statutory grant of discretion. Therefore, you can always argue when the board attempts to revoke you that you don't have the right to revoke me, I am not properly under your supervision. Therefore, when Mr. Taylor was revoked in 2001, he had the right to challenge that by saying, I am not properly under your supervision, you do not have the right to revoke me, and that that was an appropriate date to start the statute, because that's the first time that he would have what might even be deemed a live case or controversy to move into state court, to move into a challenge. It's no — Well, what happened prior to 96? What happened prior to 96? Wasn't he convicted? 1984 was the conviction date. Right. 1993 was the release on parole date. Right. 1995 was the two-year date. Under the Oregon Administrative Rules applicable to his case at that point in time, he was to be discharged in two years unless there was a specific written finding by the board that discharge was inappropriate. Those Oregon Administrative Rules, which we presented both in the brief and also in the excerpts of records at page 180, notes that the language is written in the mandatory shall. He shall be discharged unless — Well, why shouldn't we take the 1995 date, the action that occurred in 1995 as the start date? Because at that point in time, Mr. Taylor was specifically told, among other things, that he was not able to judicially challenge this. The board informed him. There is no judicial appeal available. This is in January of 1996. At that point, there is no federal statute of limitations. There is no Antiterrorism and Death Penalty Act. He is not in custody. He is not complaining about a state court judgment. He would be complaining about an administrative decision by the board to take him off of parole when he has yet to be revoked. In order to have some type of rational date, adopting the date under which he is, in fact, revoked, as the Second Circuit has done, says now here is a date. He's been revoked. He has a claim. And one part of that claim is the subject matter, this board never had jurisdiction over me in 2001 in order to revoke my probation. All right. So 2001 is the start date. Is one of the possible start dates. And you're allowed one year. Correct. Under the statute. Yes. But he didn't file until 04, August 4th, 04? He was pursuing his administrative remedies. He was, in fact, in various courts from 2001 up through his federal filing. Okay. So he gets statutory parole. Yes. I will note that the state has argued that his 2001 administrative review was a few days late, and we have presented to the district court the issue that he did file timely after he was given notice. That's also in our blue brief at footnote number six, the facts underlying that our district court never reached those facts because it adopted the most stringent possible date of April 1997. What does the statute say about exhausting administrative remedies? The statute requires exhaustion of administrative remedies, which is one of the problems. He was told. The time doesn't run until all those remedies have been exhausted? Correct. It does not. Is that specific in the statute? I'm sorry. Is that specific in the statute? In order for a paroled individual in Oregon to get into state court, they have to undertake the administrative review. I'm talking about the statute, not Oregon law. I'm sorry, Your Honor. I'm talking about the federal statute. So you are asking whether the period of time during which he may have been pursuing board remedies is excluded from the — No. My question is that the federal statute — Yes. — does extend the one-year statute of limitations until after the administrative remedies have been exhausted? My understanding, and I can certainly find, Your Honor, a case on this proposition, is that for Oregon board of parole decisions, because before going into state court to exhaust what's known as the statutory remedies, they must first exhaust their administrative remedies that entire time period. The administrative remedies through the state court processes are encompassed in the AEDPA statutory tolling. I do not have a site directly with me, Your Honor, but I do know that there is case law on that point and could provide it to the court. And beyond that, I would reserve the rest of the time. You may do so, counsel. We'll hear from the state. Thank you. May it please the Court, Carolyn Alexander for Respondent Sharon Blackletter. The correct triggering date for AEDPA's statute of limitations is April 23, 1997, and this is why. Here's Petitioner's claim. When the board failed to act by May 6 of 1995 in extending my parole, the board lost jurisdiction and had no authority over me at all. The board on May 19, 1995, acted in an order to extend parole rather than discharge. At that point is when Petitioner's claim arose, the factual predicate of Petitioner's claim. Now, he claims that he didn't know that the board had extended parole or was exercising its jurisdiction over him until November 22 of 1995, but he concedes at that point he knew because the board suspended his parole. Now, what about the argument that the board notified him he had no judicial remedy? My very point, Your Honor, what that order said was that, and that was the January 25, 1996 order, which added conditions of supervision after Petitioner was re-released on parole after his suspension. The board there said at the bottom of that order, not subject to judicial appeal, not review appeal. And this is why, and this is what happened in Oregon law. September 9, 1995, the state law changed. Up until that point, the Oregon Court of Appeals reviewed parole cases, all kinds of parole cases, revocation, release decisions, failure to release, supervision conditions, all of those things. September 9, 1995, the law changed. The Oregon Court of Appeals no longer wanted those cases that involved release decisions. They still reviewed revocation decisions, but not release decisions or supervision conditions. Instead, Petitioners had to seek relief through state habeas. So it wasn't that they no longer had a remedy. It's that the remedy changed from direct judicial review to state habeas corpus. So the board's order was correct, and I didn't make this as clear as I would like when I reread the red brief. It wasn't that he had no remedy. He no longer had a remedy in the Oregon Court of Appeals. He had to go through state habeas corpus, beginning at the trial court level. So, but that begs the question, because the order in which he challenges, he's challenged in federal habeas. He challenged in the state courts in 2002 when he finally got there, was the board had no jurisdiction over me in its May 19, 1995, order when it extended parole. Again, that's his claim. He could have, at that point, sought judicial review. Now, he claims that, well, I didn't get notice of that until November 22, 1995. But he didn't attempt to exhaust his administrative remedies at that point. He didn't go to the board and said, hey, wait, wait, wait, wait. You have no jurisdiction over me. I want a delayed appeal because I didn't get the notice. I didn't know. You didn't notify me. He didn't raise any of that. Instead, he waits for seven, almost eight years, until 2002, and then tries to go back and challenge that May 19, 1995, order. The record shows that the board said, we mailed that May 19, 1995, order to you. Petitioner never put on any evidence, even in 2002, that, no, you didn't. You didn't mail it to me. I didn't get it. I heard it through my parole officer or whatever. He's never put on any evidence to that to support that position. So the point is that, you know, the 2001 order is not at issue in this case. And in the red brief on page 15 at note one, I make it a point, he never alleged that claim in the petition. That's got nothing to do with this case. It's the May 19, 1995, order that's at issue, substantively. That's his substantive claim. But it also gives rise to the factual predicate to begin the statute of limitations analysis and the equitable tolling analysis as well. So, again, regarding timeliness, petitioner's interest, and that's the language that the Supreme Court in Johnson uses, for example. Petitioner's interest under EBPA arose on May 19, 1995, or as the district court found at the latest, November 22, 1995, when he concedes that he knew the board was continuing to exercise jurisdiction over him when he believed it had no authority to do so. And for both timeliness purposes and equitable tolling purposes, petitioner has got to show some diligence. The purpose of the statute of limitations is to prevent petitioners from doing what petitioner here is trying to do, wait for seven or eight years as the decision grows increasingly stale, as the Supreme Court in Johnson said, and assert rights at that point or assert a claim at that point. However, How do you respond to the 1336 analogy? Pardon me? How do you respond to the illegal reentry analogy? I guess I'm not quite understanding what you're asking me. I'm incorporating by reference counsel's argument that on the petition for reopening, that's the date we should be taking the 2001 petition to reopen. Should be the triggering date, you mean? Should be the triggering date, analogizing to the illegal reentry case.  Because there's no debate that the statute that applies here is 2254 D1D. It's when the petitioner knew the factual predicate of his claim. That's the triggering date. Not when he finally gets to 2001 and decides to challenge a new order by the board. In this case, what drives the analysis is the factual basis for the claim. His claim is that the board lost jurisdiction in 1995. And so he can't wait until 2001, when the board continues to exercise its jurisdiction over and over and over and over again, and then argue, my federal habeas petition is timely, and even if it's not, I'm entitled to equitable tolling because I was diligent. Where's the diligence? Just because he pursues state court proceedings in 2001 doesn't show diligence. And it doesn't indicate that that's the correct triggering date under the statute that we all agree applies here. Again, he's got to show some diligence. The timeliness issue, the equitable tolling issues get very convoluted and confused. And I would suggest, as I suggested in the red brief, that this court can go right to the merits if that's easier. The statute of limitations is not jurisdictional. And under Haskins v. Palmateer, his claim that the board lost jurisdiction because it failed to act fails. Just as a matter of state law, he cannot prevail on his claim. What Haskins said was that parole extends for the length of the sentence. And just because the board fails to act doesn't mean it loses jurisdiction. The board has to affirmatively take steps to discharge parole in that case. So regardless of statute of limitations or equitable tolling issues, his claim just is meritless under state law. Any further questions? Thank you, Counsel. Ms. Maness, you have a little bit of time left. Yes, Your Honor. I'd very briefly address the Haskins issue. Haskins was not raised before the district court below, and therefore, there wasn't briefing on that issue in the district court. Our analysis of Oregon law is that Haskins is in contradiction with at least two other cases. It does not address the due process issue, and it does not address the mandatory nature of the language of the Oregon administrative rules that were specifically applicable to Mr. Taylor, which we have presented in our excerpts of record at page 180. I'd also note that there are additional problems with the board's order back in 1995. If you look at the OARs on page 180, they actually require the board to either discharge Mr. Taylor or to issue a statement of reasons why. In the board order at issue here, the one in May of 1995, there's no statement. There's just a we're not discharging you. They never give any explanation. So there are a variety of problems with the board's order, which if the district court was to address these issues under a due process analysis, a concept that Haskins never addresses, may well reach a contrary argument under the constitutional due process rights of Mr. Taylor than Haskins reached purely applying a state law, which seems to be in dispute given the cases that we've given to Your Honors on the white brief on page 11. In terms of whether or not Mr. Taylor should have known that no judicial appeal means proceed immediately into state court and post conviction, that's one of the problems with attempting to craft the AEDP statute of limitations onto the parole board realm, and in particular, onto a decision that simply continues an individual out in society, not in custody, not pursuant to a judgment of state court, but simply out in custody under the supervision of the board. That's why both the Second Circuit and the Fourth Circuit looked at this issue and said, when you have an individual who's out of custody, the only possible date that we can come up with that's logical to apply the Anti-Terrorism and Effective Death Penalty Act statute of limitation is the date of revocation. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Ferguson, O'scannlain, Fisher